UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAIMA ASHRAF-HASSAN,<br><br>    Plaintiff,<br><br>        v.<br><br>EMBASSY OF FRANCE IN THE<br>UNITED STATES,<br><br>    Defendant. | Civil Action No. 11-805 (JEB) |

## MEMORANDUM OPINION

In May of 2011, Plaintiff Saima Ashraf-Hassan brought this suit, alleging that her employer, the Embassy of France in the United States, had violated Title VII by discriminating against her on account of her national origin, race, religion, and pregnancy. In the intervening years, the parties have conducted discovery, attempted to solve their dispute through mediation, and filed assorted motions and other pleadings. Indeed, Defendant has previously moved to dismiss and has also sought summary judgment, but it has repeatedly failed to convince the Court to deny Plaintiff a trial on her discrimination claims.

Now, three years into this litigation and on the eve of trial, Defendant seeks to secure dismissal by claiming for the first time that the Court no longer has subject-matter jurisdiction. Despite its early concessions to the contrary, the Embassy now suggests that it never fully ceded its sovereign immunity when it hired Ashraf-Hassan or when it willingly entered into this litigation. The Embassy contends that it reserved the right to assert immunity at any time of its choosing and that it has the unfettered ability to walk away whenever it deems the claims to be meritless or the proceedings unfair. It protests, moreover, that this suit is now an affront to its

1

dignity, yet Defendant offers no colorable basis to justify dismissal on sovereign-immunity grounds. This case falls squarely within multiple exceptions to the Foreign Sovereign Immunities Act, a reality that no amount of invective and indignation can change. Defendant may delay these proceedings, but it may not evade trial by means of this transparent ploy.

**I.      Background**

Plaintiff Saima Ashraf-Hassan, a former employee of the French Embassy in Washington, D.C., is a French citizen who was born in Pakistan. See Ashraf-Hassan v. Embassy of France in United States (Ashraf-Hassan II), No. 11-805, 2013 WL 6068861, at *1 (D.D.C. Nov. 19, 2013). She originally came to the United States to complete research for her Ph.D. in law. See id. After arriving in Washington, Ashraf-Hassan obtained an internship with the French Embassy, which later led to an offer of full-time employment. See id. On March 7, 2002, in New York, the parties signed an employment contract, which stipulated that it was to be governed by local law. See Pl. Resp. (ECF No. 53) at 7 & Att. 1 (Contract) at 1. From February 2002 to January 2007, Plaintiff worked for the Embassy. See Ashraf-Hassan II, 2013 WL 6068861, at *1. Her duties included supervising the Embassy's internship-placement program and coordinating the Embassy's partnership with the French-American Cultural Exchange in New York. See id.

During her five years of employment, Ashraf-Hassan alleges that she suffered discrimination on the basis of national origin, race, religion, and pregnancy, all in violation of Title VII. See id. at *2. In addition to claims of unlawful termination, Plaintiff alleges that she was subjected to a hostile work environment that was permeated by harassment so severe and pervasive that it altered the conditions of her employment. See id. at *4. The Court will not recount the details of these allegations here, as they have been set out at length in prior opinions.

See Ashraf-Hassan v. Embassy of France in United States (Ashraf-Hassan I), 878 F. Supp. 2d 164 (D.D.C. 2012); Ashraf-Hassan II, 2013 WL 6068861.

Early in this case, the Embassy moved to dismiss all causes of action, and in July 2012, the Court ruled that Ashraf-Hassan's wrongful-termination claims were barred for her failure to timely file with the Equal Employment Opportunity Commission. See Ashraf-Hassan I, 878 F. Supp. 2d at 172. The Court, however, decided that Plaintiff could proceed with her harassment claims (Counts I-III and VIII). See id. at 174-75. After several rounds of discovery on the remaining Title VII claims and an unsuccessful attempt at mediation, Defendant moved for summary judgment, principally arguing that no reasonable jury could find favorably for Plaintiff because of alleged inconsistencies in her story. See Ashraf-Hassan II, 2013 WL 6068861, at *5. The Court disagreed, observing that Defendant's objections to Plaintiff's credibility were an impermissible attempt to have the Court weigh evidence and testimony, thereby usurping the role of the finder of fact. See id. at *6-7. The Court, consequently, denied Defendant's Motion for Summary Judgment, see Order of Nov. 19, 2013 (ECF No. 36), and further denied its Motion for Reconsideration. See Order of Jan. 16, 2014 (ECF No. 45).

Evidently dissatisfied with this result and with trial looming a few weeks away, the Embassy now invokes the doctrine of sovereign immunity, claiming that after nearly three years of proceedings before this Court, it retains the power to divest itself of the suit at any time it pleases. See ECF No. 51 (Mot. to Dismiss). While at the outset of this litigation, the Embassy acknowledged that it was not entitled to assert immunity, it also stated – somewhat opaquely – that it "reserve[d] the right to raise its immunity should it be necessary to protect the confidential character of [] [its governmental] activities." See ECF No. 11 (prior Mot. to Dismiss) at 1. This time has now come, according to Defendant.

The Embassy argues that it is able to "withdraw[] its waiver of immunity since this action is no longer based on the commercial exception or any other exceptions codified by Congress." See Mot. at 3. It further claims – regardless of the terms of the Foreign Sovereign Immunities Act – that the Embassy can raise "implied immunity against frivolous litigations and unfair trials." Id. Defendant has already communicated that denial of this present Motion will lead it to seek appellate review for alleged violations of its "right of due process" and "interfer[ence] with its implied immunities." Reply at 5. The Court, accordingly, vacated the trial date and permitted full briefing of this question.

## II.     Legal Standard

In evaluating a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1), the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal citation omitted); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005). The Court need not accept as true, however, "a legal conclusion couched as a factual allegation," or an inference unsupported by the facts set forth in the Complaint. Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)) (internal quotation marks omitted).

## III.    Analysis

The Foreign Sovereign Immunities Act is the "sole basis for obtaining jurisdiction over a foreign state in our courts." Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 434 (1989). Notwithstanding "applicable international agreement[s]" that may create new bases for jurisdiction, the terms of the FSIA are absolute: the district courts have jurisdiction over "any

4

claim . . . with respect to which the foreign state is not entitled to immunity . . . under [the listed sections of the Act]." 28 U.S.C. § 1330(a) (emphasis added).

In seeking Rule 12(b)(1) dismissal on sovereign-immunity grounds, Defendant makes three rather convoluted arguments, principally contending that (1) when it filed its first responsive pleading and acknowledged a waiver of its immunity, the Embassy also reserved the right to withdraw such waiver in the future, see Mot. at 1; (2) despite having initially conceded that Plaintiff's employment relationship with the Embassy would generally qualify for the commercial-activities exception to the FSIA, this suit is no longer "based upon" Defendant's commercial activities because Plaintiff has not definitively proved that the alleged discriminatory incidents occurred, see id. at 2-3; Reply at 4-5; and (3) notwithstanding the express terms of the FSIA, Defendant can assert a form of implied immunity against any proceedings that it deems frivolous or unfair. See Mot. at 3; Def. Reply at 5.

Plaintiff responds that the commercial-activities exception continues to apply, see Opp. at 4-7, and that even if it does not, Defendant is estopped from raising immunity so late in the game. See id. at 3-4. The Court need not examine the estoppel argument because it can decide the Motion by considering the waiver and commercial-activities exceptions to the FSIA.

A. The Waiver Exception

Section 1605(a)(1) of the FSIA provides:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver.

As its text acknowledges, § 1605(a)(1) recognizes two species of waiver. The first is explicit waiver, whereby the foreign state expressly consents – for example, in the text of a treaty

5

or a contract – to forgo its immunities with regard to a certain class of disputes or a particular subject matter.  See World Wide Minerals, Ltd. v. Republic of Kazakhstan, 296 F.3d 1154, 1162 (D.C. Cir. 2002).  Although, in this case, there is no such express provision in either a treaty or contract, Defendant may have expressly waived its immunity in its initial pleading.  See Mot. to Dismiss at 1 ("it is conceded that [the Embassy's] immunity does not apply in this case . . .").  The Court need not decide the issue, however, because a second type of waiver – implied waiver – is clearly evident here.

Implied waiver, which is not defined in the text of the FSIA, has been construed narrowly, see Creighton Ltd. v. Government of the State of Qatar, 181 F.3d 118, 122 (D.C. Cir. 1999), and requires clear evidence of the foreign sovereign's intention to dispense with its immunity.  See id. (citing Princz v. Federal Republic of Germany, 26 F.3d 1166, 1174 (D.C. Cir. 1994)).  Courts have almost unanimously restricted instances of implied waiver to three particular circumstances.  See World Wide Minerals, Ltd., 296 F.3d at 1161 n.11 (citing Creighton Ltd., 181 F.3d at 122).  First, an implied waiver may arise where a foreign state concludes a contract that contains a choice-of-law clause designating the laws of the United States as applicable.  See id.; Transamerica S.S. Corp. v. Somali Democratic Republic, 767 F.2d 998, 1006 (D.C. Cir. 1985) (Wald, J., concurring) ("[W]hen a foreign government agrees to the application of a particular provision of [United States] law, that government has waived immunity in actions for violation of the law in question.").  Second, an implied waiver may also arise where "a foreign state [] file[s] a responsive pleading without raising the defense of sovereign immunity."  World Wide Minerals, Ltd., 296 F.3d at 1161 n.11.  Finally, a foreign state may implicitly waive its right to claim immunity when it agrees to submit a dispute to arbitration in the United States.  See Maritime Int'l Nominees Establishment v. Republic of

Guinea, 693 F.2d 1094, 1103 (D.C. Cir. 1982). The first and second of these forms of implied waiver come into play here, and the Court addresses each in turn.

   1. *Choice-of-Law Clause*

As the drafters of the FSIA noted, prior to the formal promulgation of sovereign-immunity rules, United States courts "found [implicit] waivers in cases where . . . a foreign state has agreed that the law of a particular country should govern a contract." H.R. Rep. 94-1487, 18-19, 1976 U.S.C.C.A.N. 6604, 6616-18; see also Marlowe v. Argentine Naval Comm'n, 604 F. Supp. 703, 708 (D.D.C. 1985) (noting that House report 94-1487 has been widely treated as authoritative in construing FSIA). Section 1605(a)(1) of the FSIA has since been consistently interpreted as retaining this basis for implied waiver. See Marlowe, 604 F. Supp. at 708; Eckert Int'l, Inc. v. Gov't of Sovereign Democratic Republic of Fiji, 32 F.3d 77, 79-80 (4th Cir. 1994) (collecting cases).

Where a foreign sovereign consents to subject its contractual dealings to U.S. law, it "voluntarily assume[s] obligations under [that] law." Transamerica S.S. Corp., 767 F.2d at 1006 (Wald, J., concurring). While such obligations "might theoretically be enforced in the foreign country's own courts . . . [U.S. courts] are clearly best able to interpret and apply the laws of this country." Id. Similar to situations involving contractual agreements to arbitrate, choice-of-law clauses designating U.S. law as applicable appear to "contemplate a role for United States courts" in resolving disputes. Maritime Int'l Nominees Establishment, 693 F.2d at 1103. This is particularly the case where the transaction embodied in the contract is to be implemented locally. See Joseph v. Office of Consulate Gen. of Nigeria, 830 F.2d 1018, 1023 (9th Cir. 1987) ("In light of the wholly local nature of the transaction, it is virtually inconceivable that the Consulate contemplated that adjudication of disputes would occur in a court outside of the United States.").

7

Once a sovereign has impliedly waived its immunity through a choice-of-law clause, this waiver cannot be unilaterally withdrawn. As the drafters of the FSIA noted, "[T]he language [of §1605(a)(1) ] is designed to exclude a withdrawal of the waiver both after and before a dispute arises except in accordance with the terms of the original waiver." H.R. Rep. 94-1487 at 6617. In other words, once a sovereign "has induced a private person into a contract" with the promise – whether express or implied – that the state will not invoke its immunity, it "cannot, when a dispute arises, go back on its promise." Id.

In this case, the employment contract that the Embassy concluded with Plaintiff was expressly subject to U.S. law to the exclusion of any other potential source. The contract stipulates that it is to be governed by "local legislation." See Contract at 1 ("*Ce document relève, pour son application de la législation locale*," which translates roughly as: "This document relies upon local law for its application."). In this case, the applicable law is that of New York, the place where the contract was concluded. See Contract at 2. The clause is not subject to any limitation or reservation. Past decisions, as well as the legislative history of the FSIA, suggest that by virtue of this choice-of-law clause, Defendant assumed obligations to abide by U.S. law – including Title VII – in its employment relationship with Plaintiff and, accordingly, waived its right to assert immunity for any dispute arising therefrom. See, e.g., Ghawanmeh v. Islamic Saudi Acad., 672 F. Supp. 2d 3, 9-10 (D.D.C. 2009) (finding implied waiver of immunity for purposes of Title VII and other employment-related claims where employment contract governed by Virginia laws); Joseph, 830 F.2d at 1023 (lease agreement providing for adjudication of landlord-tenant disputes in court impliedly waived immunity as to related breach- of-contract and tort claims).

Defendant provides no authority or argument to convince the Court that the contract's

choice-of-law clause should not serve as a valid form of implied waiver, and the Court could thus deny Defendant's Motion on this ground alone.

2. *Responsive Pleading*

Another waiver here, moreover, is equally powerful. A separate and commonly recognized form of implied waiver may arise where the state files a responsive pleading and fails to contest jurisdiction by asserting its sovereign immunity. See Foremost-McKesson, Inc. v. Islamic Republic of Iran, 905 F.2d 438, 443 (D.C. Cir. 1990). The D.C. Circuit has clarified that such waiver requires "a conscious decision [by the sovereign] to take part in the litigation and a failure to raise sovereign immunity despite the opportunity to do so." Id. at 444 (internal quotations omitted). Ordinarily, a motion to dismiss that omits mention of immunity will not provide sufficient proof of such a conscious decision. See Gutch v. Fed. Republic of Germany, 444 F. Supp. 2d 1, 9 (D.D.C. 2006) (overruled on other grounds); Canadian Overseas Ores Ltd. v. Compania de Acero del Pacifico S.A., 727 F.2d 274, 277 (2d Cir. 1984).

In its Motion to Dismiss, however, Defendant specifically addressed the issue of sovereign immunity and agreed not to challenge the Court's personal jurisdiction unless the case should happen to "intrude upon its governmental activities," thereby making it necessary for the Embassy to "protect the confidential character of such activities." Mot. to Dismiss at 1. Through this initial concession and its continued participation in this suit (including the filing of an answer and a motion for summary judgment), Defendant has impliedly waived its right to assert immunity. To the extent that its purported reservation of the right to withdraw is still valid at this late stage, the Embassy has offered absolutely no explanation of how the "confidential character" of its "governmental activities" has now been implicated.

In fact, in attempting to withdraw the waiver, the Embassy is clearly confounded by the

9

very terms of its reservation. Defendant now announces that, "[p]ursuant to 28 USCS §1605(a)(1), the Embassy hereby withdraws its waiver of immunity because, at the end of discovery, Plaintiff's remaining claims of pregnancy discrimination and harassment are no longer based on the Embassy's commercial activity." Mot. at 1 (emphasis added). Yet "commercial activity" was never the basis of its reservation; "government activity" was. Since the FSIA makes clear that, having waived, the sovereign cannot subsequently withdraw "except in accordance with the terms of the waiver," 28 U.S.C. § 1605(a)(1), Defendant is out of luck. Perhaps it is confusing its waiver with the FSIA's commercial-activities exception, which is a functionally separate and independent basis for jurisdiction that the Court now considers.

　　B. Commercial Activities

Even if waiver were not a bar here, the commercial-activities exception to the FSIA would be. The exception provides:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

Id. § 1605(a)(2). The Embassy now contends that this suit no longer falls within the ambit of this exception.

The commercial-activities exception has been deemed to apply to employment relationships that exhibit certain characteristics, as set out by the D.C. Circuit in a case involving a dispute between the United Arab Emirates' embassy in the United States and one of its employees. See El-Hadad v. United Arab Emirates, 216 F.3d 29, 34 (D.C. Cir. 2000). The El-Hadad Court proposed a flexible "multi-factor inquiry" into the employment relationship,

10

considering – for example – whether the employee qualifies as a civil servant as defined under the law of the foreign state, whether the position was clerical in scope and did not involve governmental decisionmaking, and whether the arrangement was contractual. See id. As a general rule, if an employee is contracted to work as a non-civil servant and has duties of a clerical nature, the foreign state cannot claim immunity from any suits brought by her that are "based upon" this employment relationship. See 28 U.S.C. § 1605(a)(2). In order for the suit be "based upon" the commercial activity in question, the activity must constitute an "element[] of a claim, that if proven, would entitle a plaintiff to relief under his theory of the case." Goodman Holdings v. Raifdain Bank, 26 F.3d 1143, 1145 (D.C. Cir. 1994) (quoting Saudi Arabia v. Nelson, 507 U.S. 349, 357 (1993)).

In this case, Defendant does not contest that Plaintiff "was hired in a purely administrative position, was not a civil servant, and was not involved with governmental decisions," Mot. to Dismiss at 1, and that, as a consequence, her employment relationship with the Embassy constituted commercial activity under the terms of § 1605(a)(2) and as further defined in El-Hadad. See Mot. at 1; Reply at 4 ("Embassy does not dispute that its hiring of Plaintiff was a commercial activity."). Defendant also does not contest that Plaintiff's claims of Title VII employment discrimination depend, for an essential element, on Plaintiff's employment with the Embassy. See Baloch v. Kempthorne, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (Title VII hostile-work-environment claim requires that plaintiff "show that his employer subjected him to discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.") (internal quotation marks omitted).

What the Embassy does appear to argue, however, is that Plaintiff's current action is "no

11

longer based upon [this] commercial activity," Mot. at 1, because, due to alleged inconsistent statements, "Plaintiff's remaining claims cannot be true and should have been dismissed as a matter of law." Id. at 3. If the Court understands this argument, Defendant seems to be contending that the suit cannot be "based upon" commercial activity if the alleged discriminatory acts in question never occurred. If this creative spin on the commercial-activities exception were taken at face value, a district could never assert jurisdiction over a foreign state unless and until a plaintiff proved her allegations to the sovereign defendant's satisfaction – a rather high (not to mention, arbitrary) standard indeed.

Defendant's reading of § 1605(a)(2) not only defies common sense, but it also appears to be an attempt to re-litigate matters that this Court has already definitively addressed in responding to Defendant's Motion for Summary Judgment and subsequent Motion for Reconsideration. See Ashraf-Hassan II, 2013 WL 6068861, at *6-7; Order of Jan. 16, 2014. The Court, accordingly, finds that because Plaintiff's claims are "based upon" the Embassy's commercial activities, and because § 1605(a)(2) of the FSIA does not recognize any option for withdrawal once it applies, Defendant cannot assert its sovereign immunity to deprive the Court of jurisdiction.

    C. FSIA as Sole Source for Immunity

Although this point should already be abundantly clear, Defendant's attempt to assert some nebulous form of "implied immunity against frivolous litigations and unfair trials," Mot. at 3, is also unavailing. To begin with, in denying summary judgment, this Court has already held that the litigation is not frivolous. In any event, the Embassy's only source for this supposed implied immunity comes from a case decided more than 200 years ago, which pertained to the seizure of a sovereign vessel owned by none other than Napoleon Bonaparte. See id. (citing The

12

Schooner Exch. v. McFaddon, 11 U.S. 116, 137 (1812)). This decision significantly pre-dates the FSIA, and any implied immunities that it purported to create have long since been superseded by the provisions of the FSIA and related legislation, except potentially for cases involving "head-of-state immunity." See Ye v. Zemin, 383 F.3d 620, 625 (7th Cir. 2004). The "[FSIA] contains a comprehensive set of legal standards governing claims of immunity in every civil action against a foreign state or its political subdivisions, agencies or instrumentalities." Verlinden B.V. v. Cent. Bank of Nigeria, 461 U.S. 480, 488 (1983). The Embassy cannot, therefore, rely on Schooner Exchange to wriggle off the hook here.

**IV.    Conclusion**

For the forgoing reasons, this Court will issue a contemporaneous Order this day denying Defendant's Motion to Dismiss.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: April 17, 2014