UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SAIMA ASHRAF-HASSAN,

    Plaintiff,

        v.

EMBASSY OF FRANCE IN THE
UNITED STATES,

    Defendant.

Civil Action No.  11-805 (JEB)

### MEMORANDUM OPINION AND ORDER

This case involves allegations of discrimination by Saima Ashraf-Hassan against her former employer, the French Embassy here in Washington.  As a bench trial approaches, each party has asked the Court to draw certain adverse inferences against the other side for the purported failure to preserve evidence.  Believing that such inferences are not warranted, at least in advance of trial, the Court will deny both Motions.

**I.    Legal Standard**

Although the D.C. Circuit has not weighed in on the topic of adverse inferences in connection with the failure to preserve evidence, a number of other courts in this district have done so and in a fairly consistent manner.  They begin with the principle that "[a] party has a duty to preserve potentially relevant evidence . . . once [that party] anticipates litigation."  Chen v. District of Columbia, 839 F. Supp. 2d 7, 12 (D.D.C. 2011) (internal quotation marks and citations omitted; alteration and ellipsis original); accord Mahaffey v. Marriott Int'l, Inc., 898 F. Supp. 2d 54, 58 (D.D.C. 2012).  "The duty also extends to the managers of a corporate party, who are responsible for conveying to their employees the requirements for preserving evidence."

1

Chen, 839 F. Supp. 2d at 12 (internal quotation marks and citation omitted). "A party that fails to preserve evidence runs the risk of being justly accused of spoliation—defined as the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation—and find itself the subject of sanctions." Id. (internal quotation marks and citation omitted).

There are myriad sanctions that could issue against a culpable party, including fines and attorney fees. Here, both sides are asking for an evidentiary sanction – namely, that the factfinder should draw certain adverse inferences. In order to achieve such a result, a litigant must show the following:

> (1) [T]he party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a "culpable state of mind"; and (3) the evidence that was destroyed or altered was "relevant" to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defense of the party that sought it.

Mazloum v. District of Columbia Metropolitan Police Dep't, 530 F. Supp. 2d 282, 291 (D.D.C. 2008) (citation omitted); accord Chen, 839 F. Supp. 2d at 13. In a bench trial, such as the forthcoming one in this case, the question is not about how a jury should be instructed, but whether the Court itself should draw particular adverse inferences. In making such a determination, the Court bears in mind the admonition that, "because the overriding purpose of the inherent power is 'to achieve the orderly and expeditious disposition of cases, the use of [the sanctions] power should reflect our judicial system's strong presumption in favor of adjudications on the merits." Mahaffey, 898 F. Supp. 2d at 58 (quoting Shepherd v. American Broadcasting Companies, Inc., 62 F.3d 1469, 1475 (D.C. Cir. 1995)). Put another way, courts

must remain circumspect in their drawing of inferences before the actual evidence is presented. This is particularly so in bench trials where prejudice is less likely.

## II.     Analysis

Believing that what's sauce for the goose is sauce for the gander, both sides here ask the Court to draw adverse inferences from their opponent's purported failure to preserve evidence. The Court treats each request separately.

### A.     Plaintiff's Motion

Ashraf-Hassan contends that the Embassy's improper destruction of certain email accounts should lead the Court to infer that: (1) "Defendant was aware of [her] claims of harassment and discrimination prior to her termination in January 2007"; (2) "Plaintiff's supervisors, Dr. Tual and Mr. Judes[,] routinely referred to her in a derogatory manner by email"; and (3) "Defendant failed to adequately respond to Plaintiff's complaints of discrimination and harassment."  Pl. Mot. (ECF No. 46) at 2.

In contesting Ashraf-Hassan's Motion, the Embassy largely relies on the first prong of the aforementioned test – namely, that it had no obligation to preserve evidence because it did not possess knowledge of forthcoming litigation.  Defendant concedes that it has a policy, rooted in French law, under which it typically destroys the emails of employees upon the termination of their employment with the Embassy.  See ECF No. 31 (Def. Opp. to Original Motion *in Limine*) at 4.  This policy is not followed, however, where "there are specific reasons to preserve [the emails,] such as in the event of an incident of discrimination reported to the Ministry of Foreign Affairs[,] which in turn would order the preservation of relevant email accounts."  Id.  Of particular relevance here, the dates of separation for particular employees (and, ergo, the deletion of their email accounts) were "September 2005 for Ms. Manes, July 2007 for the Ambassador,

August 2007 for Dr. Tual and Mr. Judes, and August 2008 for Ms. Rispal," who are some of the key witnesses here. Id. The central question, therefore, is when the Embassy should have been on notice of litigation.

Ashraf-Hassan does not contest that Defendant did not receive a copy of her EEOC complaint until March 2008, see id. at 9, by which time all but Rispal were gone. Rispal's emails were not preserved, moreover, because she worked most of the time in New York and had limited contact with Plaintiff, thus leading the Embassy not unreasonably to believe that she was unconnected with the potential discrimination action. See id. at 5. Ashraf-Hassan, for her part, does not take issue with the deletion of the Rispal email account, but instead argues that the Embassy should have known of possible litigation before receiving her EEOC complaint.

The Court does not concur. Although she wrote in 2006 to different Embassy employees, her complaints varied and did not clearly demonstrate an inclination to take legal action. Surely an employer cannot be required to begin "evidence preservation" the moment it learns of any employee dissatisfaction.

Even if Plaintiff could show that Defendant should have moved more quickly to preserve emails, the Court doubts that she could satisfy the third prong inasmuch as it is highly uncertain that the emails could help Ashraf-Hassan prove her case. For example, simply because one email from Tual to Judes may have referred to her negatively does not show a likelihood that similar emails exist. The Court is likewise unsure how now-deleted emails would demonstrate – beyond Plaintiff's own knowledge – that the Embassy "failed to adequately respond to [her] complaints of discrimination and harassment." Pl. Mot. at 2.

In sum, particularly given that an adverse inference is a serious step for the Court to take, Plaintiff has not convincingly argued that it is merited here. The Court, accordingly, will deny her Motion.

B.  Defendant's Motion

In its Motion, conversely, the Embassy wishes the Court to draw certain adverse inferences from Plaintiff's failure to preserve emails, specifically that:

> *The letter that Plaintiff sent to the Ambassador on April 16, 2002, was identical to the one she sent to the Secretary General on that same day. . . .[;]
> *The emails that Plaintiff sent to her sister during her employment with the Embassy . . . would show that Plaintiff did not report to her sister any of the incidents of harassment she described in her Complaint;
> *Plaintiff's email sent to [Virginie] Pont in November 2006 to request a meeting with the Ministry of Foreign Affairs in Paris to report her complaints . . . would show that she did not report any incident of harassment but reported only her dissatisfaction with her salary; and
> *Emails Plaintiff sent to Righini and Marfaing . . . would show that Plaintiff did not report any incident of harassment.

Def. Mot. (ECF No. 48) at 1. Plaintiff does not deny that she has not preserved certain emails, but rejoins that the Embassy has suffered no prejudice therefrom. The Court agrees that it is premature to draw any adverse inference.

As discussed in regard to Plaintiff's Motion, to prevail here, Defendant must prove that the emails would bolster its defense. Yet, it is too early to know that now before cross-examination. For example, the Embassy believes that emails Plaintiff sent to her sister do not mention any discrimination. That hardly proves discrimination did not occur, and, in any event, Defendant can ask Ashraf-Hassan at trial whether she complained to her sister and, if so, why she did not retain the emails. Perhaps after such testimony, an adverse inference may be warranted, but not yet. This reasoning also applies to other emails that purportedly omit any

reference to discrimination, as well as to her letter to the Ambassador. Defendant can question Plaintiff on these topics at trial, and, in the event her answers are unsatisfactory, it may then ask the Court to draw an adverse inference. Given this outcome, the Court need not address Plaintiff's additional argument that, aside from her emails to her sister, the Embassy at one time itself possessed all of the other emails it now requests and thus is hardly in a position to complain about their destruction.

The Court, therefore, will deny Defendant's Motion without prejudice.

### III. Conclusion

For the reasons set forth above, the Court ORDERS that:

1. Plaintiff's [46] Motion in Limine is DENIED; and

2. Defendant's [48] Motion in Limine is DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: September 17, 2015